## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FREDERICK WAYNE CAVITT          )
                                )
    Petitioner/Appellant,       )
                                )          Appeal No.
                                )          01-A-01-9712-CH-00713
VS.                             )
                                )          Davidson Chancery
                                )          No. 97-2994-III
TENNESSEE DEPARTMENT OF          )
CORRECTION,                     )
                                )
    Respondent/Appellee.        )

**FILED**

**April 23, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## APPEAL FROM THE CHANCERY COURT OF DAVIDSON
## COUNTY AT NASHVILLE, TENNESSEE

### THE HONORABLE ELLEN HOBBS LYLE PRESIDING

FREDERICK WAYNE CAVITT
#108657
N.W.C.C.  3/B/202
Route 1, Box 660
Tiptonville, TN 38079

PRO SE/PETITIONER/APPELLANT

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

PATRICIA C. KUSSMANN, BPR 15506
Assistant Attorney General
Civil Rights and Claims Division
425 Fifth Avenue North
Second Floor, Cordell Hull Building
Nashville, Tennessee 37243-0488

ATTORNEYS FOR RESPONDENT/APPELLEE

**AFFIRMED AND REMANDED**

        PATRICIA J. COTTRELL, JUDGE

CONCUR:
KOCH, J.
CAIN, J.

# OPINION

In this appeal, a state prisoner challenges the extension of his parole eligibility date by the Department of Correction which resulted from a disciplinary proceeding for infraction of department policies. Mr. Cavitt, the Appellant, contends the 1991 extension increased his 1985 sentence *ex post facto*. The trial court dismissed Mr. Cavitt's complaint for declaratory judgment for failure to state a claim upon which relief could be granted. We affirm.

## I.

In 1985, Mr. Cavitt plead guilty to second degree murder and was sentenced to 35 years imprisonment for an offense committed March 23, 1985. He was to become eligible to be considered for parole after serving 30% of that sentence. At the time of his offense and his sentencing, Tenn. Code Ann. § 40-28-301 [enacted 1979, repealed by 1985 Tenn. Pub. Acts (1st E.S.), ch 5 § 7] was in effect.[1] That statute provided:

> (h)(1) The release classification eligibility date provided for in this section shall be the earliest date a person convicted of a Class X felony shall be eligible for release classification status, such date being conditioned on the prisoner's good behavior while in prison. For a violation of any of the rules of the department of correction or the institution in which the person is incarcerated the commissioner of correction or his designees, may defer the release classification eligibility date so as to increase the total amount of time a person must serve before becoming eligible for

---

[1] The statutory provisions regarding parole eligibility dates and their modification are now found at Tenn. Code Ann. § 40-35-501(k) (1998 Supp.) which has remained in effect since its passage as part of the Criminal Sentencing Reform Act of 1982. Both Appellant and the Department relied upon Tenn. Code Ann. § 40-30-501(k) as codified in 1985. That provision deals with persons convicted of felonies, but the more specific Class X felon provision in Tenn. Code Ann. § 40-28-301 should be applied in analyzing Mr. Cavitt's situation. The two statutes do not differ substantively in any way relevant to the issues raised in this appeal.

> release classification status. This increase may, in the discretion of the commissioner, be in any amount of time not to exceed the full sentence originally imposed by the court and shall be imposed pursuant to regulations promulgated by the commissioner of correction. [Acts 1979, ch. 318 § 20].

In 1985, the Department's written policy outlining punishments which a disciplinary committee was authorized to impose for violation of Department policies did not include any extension of a prisoner's parole eligibility date other than through loss of sentence reduction credits.

Appellant states that on February 15, 1989, new Disciplinary Punishment Guidelines were enacted. In relevant part, Policy 502.02 of these 1989 policies provided:

> "In all cases in which an inmate is found guilty of a disciplinary offense that resulted in physical injury to an employee, volunteer or visitor, in addition to any other punishment imposed, the offender's parole or release eligibility date shall be extended by adding thereto an additional thirty (30) percent (%) of the offender's original maximum sentence, or by extending the inmate's parole or release eligibility date to the sentence expiration date, whichever is less.

On May 16, 1991, in an administrative proceeding before the disciplinary committee, Mr. Cavitt was found guilty of assault which resulted in injury to a correctional officer. In reliance on TDOC Policy 502.02, quoted above, the disciplinary committee recommended that Mr. Cavitt be required to serve 60% of his 35-year sentence, rather than the 30% previously required, before becoming eligible for release on parole. That recommendation was approved by the commissioner of correction on May 21, 1991.

Mr. Cavitt argues that by extending his parole eligibility date, the Department imposed a greater or more severe punishment in 1991 than was prescribed by law at the time of his original offense, conviction, and sentence in 1985. This action, he asserts, violates the *ex post facto* clause of Article I,

3

Section 10 of the U.S. Constitution and Article I, Section 11 of the Tennessee Constitution. Specifically, Mr. Cavitt argues that the 1989 Department policy authorizing extension of parole eligibility for specified disciplinary offenses was not in effect at the time of his offense, conviction and sentencing and, therefore, cannot be applied to him to alter his punishment to his disadvantage.

Mr. Cavitt filed a petition for declaratory judgment in the Chancery Court for Davidson County pursuant to the Administrative Procedures Act, having requested a declaratory order from the Department of Correction and having been denied relief by the Department. See Tenn. Code Ann. § 4-5-224 (1998). The Department filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6), which the trial court granted. The trial court held that the policy authorizing extension of parole eligibility is not an *ex post facto* law since it does not increase the quantum of punishment. The court further held that the extension of Mr. Cavitt's parole eligibility date was the result of his violation of Department policies, after notice that such extension was a potential punishment for such violation, and not an enhancement of the punishment for his underlying conviction.

## II.

The United States Constitution, Article I, Section 10 forbids the states from passing any *ex post facto* laws. The Constitution of Tennessee, Article I, Section 11 contains a similar prohibition. Mr. Cavitt has brought claims under both. The interpretations by the United States Supreme Court of the federal constitutional provision and those of the Tennessee Supreme Court of the state constitutional provision are complementary and consistent. *Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. App. 1995).

The *ex post facto* prohibition is "aimed at laws that `retroactively alter the

definition of crimes or increase the punishment for criminal acts.'" *California Department of Corrections v. Morales*, 514 U.S. 499, 504, 115 S. Ct. 1597, 1601, 131 L.Ed.2d 588 (1995). An *ex post facto* law "changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed." *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). The critical question in an *ex post facto* claim such as Mr. Cavitt's is "whether the law changes the punishment to the defendant's disadvantage, or inflicts a greater punishment than the law allowed when the offense occurred." *State v. Pearson*, 858 S.W.2d 879, 883 (Tenn. 1993).

Under both state and federal constitutions and cases interpreting them, two factors must be present to establish a violation of the *ex post facto* prohibition: (1) the law must apply retrospectively to events occurring before its enactment, and (2) it must disadvantage the offender affected by it. *State v. Ricci*, 914 S.W.2d 475, 480 (Tenn. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 732 (Tenn. App. 1995); *State v. Pearson* 858 S.W.2d 879, 882 (Tenn. 1993) (quoting *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987).

III.

Actions which extend parole eligibility can implicate the *ex post facto* clause. "The State cannot, and indeed does not, argue that retroactive alterations of the criteria for parole eligibility cannot implicate *ex post facto* concerns. Eligibility for parole consideration is part of the law annexed to the crime when committed." *Kaylor v. Bradley*, 912 S.W.2d at 732, citing *Weaver v. Graham*, 450 U.S. at 32-33, 101 S.Ct. at 966 (other citations omitted.). As the U.S. Supreme Court recently stated:

> As we recognized in *Weaver*, retroactive alteration of parole or early release provisions, like the retroactive application of provisions that govern initial sentencing, implicates the *Ex Post Facto* Clause

because such credits are "one determinant of petitioner's prison term ... and ... [the petitioner's] effective sentence is altered once this determinant is changed." *Ibid.* We explained in *Weaver* that the removal of such provisions can constitute an increase in punishment, because a "prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed."

*Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997).

In the instant case, the analysis of any *ex post facto* implication of Mr. Cavitt's claims must begin with Tenn. Code Ann. § 40-28-301(h)(1), quoted above, which was part of "the law annexed to the crime" which Mr. Cavitt committed in 1985.[2] By its plain words, that statute put offenders on notice that their release classification or parole consideration eligibility date was "conditioned on the prisoner's good behavior while in prison" and that the commissioner of correction could defer an inmate's release eligibility date for a violation of department rules "so as to increase the total amount of time a person must serve before becoming eligible for release classification status." Tenn. Code Ann. § 40-28-301.

Thus, at the time of Mr. Cavitt's offense, the law clearly allowed deferral of parole eligibility on the basis of an inmate's conduct while incarcerated. The Department's adoption of Policy 502.02 did not retroactively increase the punishment for offenses committed after the adoption of Tenn. Code Ann. § 40-28-301 in 1979. From the moment he was sentenced in 1985, Mr. Cavitt's release eligibility was contingent upon his good behavior in prison.

---

[2] Tenn Code Ann. § 40-35-501(k), applying to all felons, was also in effect at the time Appellant committed his offense and was codified then as Tenn. Code Ann. § 40-35-501(h).

6

IV.

The principle on which ex post facto prohibitions are based is one of fairness. Individuals have a right to fair warning of the conduct which will give rise to criminal penalties. *Marks v. United States*, 430 U.S. 188, 87 S.Ct. 990, 51 L.Ed.2d 260 (1977). This includes the right to fair warning of the nature and severity of the possible penalties involved. As the U.S. Supreme Court has noted:

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

*Weaver v. Graham*, 450 U.S. at 30-31, 101 S.Ct. At 965, 67 L.Ed.2d 17.

Mr. Cavitt's parole eligibility date was deferred because he was found to have assaulted a correctional officer, causing him injuries. Thus, the extension of his parole eligibility date was not the result of a legislative or administrative enactment which increased his punishment for his original 1985 criminal offense. Rather, it was the result of his 1991 conduct while incarcerated. At the time he committed his assault, TDOC Policy 502.02 had been in effect for two years. Mr. Cavitt clearly had fair warning of the consequences of an assault before he committed the assault.

In *Reinholtz v. Bradley*, 945 S.W.2d 727 (Tenn. App. 1996), an inmate challenged the extension of his release eligibility date based upon another provision of Policy 502.02 which authorized such extension when an inmate is found guilty of the disciplinary offense of escape. This Court upheld the extension of his release eligibility date against an *ex post facto* challenge. This opinion is consistent with *Reinholtz*.

We hold that the extension of Appellant's parole eligibility date on the

7

basis of his 1991 injurious assault on a correctional officer as authorized by policy 502.02 did not violate the *ex post facto* prohibition of federal and state constitutions because: 1) T.C.A. § 40-28-301(h)(1) was part of the law annexed to the crime he committed in 1985 and clearly notified offenders that their parole eligibility could be negatively impacted by their conduct while incarcerated; 2) Policy 502.02 was effective prior to the assault, thereby giving Appellant fair warning of the potential consequences of his actions; and 3) the extension was the result of Appellant's 1991 conduct and not the result of a retrospective application of increased punishment to his 1985 criminal offense.

V.

The order of the trial court dismissing Appellant's action is affirmed. This matter is remanded to the Chancery Court of Davidson County for any further proceedings consistent with this opinion. Costs of this appeal are taxed to Appellant.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____
WILLIAM C. KOCH, JUDGE


_____
WILLIAM B. CAIN, JUDGE

8